# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO. 3:11-CV-409-MOC-DCK

| | |
|---|---|
| **TIFFANY N. ALEXANDER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Brief Supporting Motion for Summary Judgment" (Document No. 13), filed February 6, 2012, "Defendant's Motion For Summary Judgment" (Document No. 14), and Defendant's "Memorandum In Support Of The Commissioner's Decision" (Document No. 15), filed April 6, 2012. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B).

After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that "Plaintiff's Motion For Summary Judgment" be denied; that Defendant's "Motion For Summary Judgment" be granted; and that the Commissioner's decision be affirmed.

## I. BACKGROUND

*Pro se* Plaintiff Tiffany Nicole Alexander ("Plaintiff") seeks judicial review of an unfavorable administrative decision on her application for disability benefits. (Document No. 1). On October 30, 2008, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 *et seq*., alleging an inability to work due to a disabling condition beginning January 1, 2005. Transcript of the Record

of Proceedings ((("Tr.") 15, 140). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on April 24, 2009, and again after reconsideration on August 25, 2009. (Tr. 15, 82-86, 88-90). Plaintiff filed a timely written request for a hearing on October 9, 2009. (Tr. 15, 96-97).

On June 7, 2010, Plaintiff appeared and testified at a hearing before Administrative Law Judge Robert Egan ("ALJ"). (Tr. 15, 30). In addition, Rick Wheeler, a witness for Plaintiff, and Jill Calvert, Plaintiff's attorney, appeared at the hearing. (Tr. 15, 30). On January 31, 2011, the ALJ issued an unfavorable decision denying Plaintiff's claim. (Tr. 12-23). Plaintiff filed a request for review of the ALJ's decision on March 30, 2011, which was denied by the Appeals Council on June 24, 2011. (Tr. 6, 1-5). The January 31, 2011 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request. Id.

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on August 25, 2011. (Document No. 1). The pending motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 657 F.3d 470, 472 (4th Cir.

2

2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between the date of alleged onset of disability, January 1, 2005, and Plaintiff's date last insured, December 31, 2008.[1] (Tr. 15). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ

---

[1] Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

3

concluded that Plaintiff was not under a disability at any time from January 1, 2005 through December 31, 2008. (Tr. 15-23).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

    (1)    whether claimant is engaged in substantial gainful activity - if yes, not disabled;

    (2)    whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

    (3)    whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

    (4)    whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

    (5)    whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fourth step that Plaintiff was not disabled. (Tr. 22).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity during the period from her alleged onset date of January 1, 2005 through her date last insured of December 31, 2008. (Tr. 17). At the second step, the ALJ found that Plaintiff's

4

fibromyalgia and degenerative disc disease of the cervical spine were severe impairments. (Tr. 17).[2]

At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 19).

Before considering step four, the ALJ determined Plaintiff's RFC, that is, "what she can still do despite her physical, mental, nonexertional, and other limitations." 20 C.F.R. 404.1520. The ALJ assessed Plaintiff's RFC and found that, through the date last insured, she retained the capacity to perform the full range of medium work as defined in 20 C.F.R. 404.1567(c). (Tr. 19). In making this determination, the ALJ considered the testimony of both Plaintiff and Mr. Wheeler and found that "the [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 20). Additionally, the ALJ found that "[i]n terms of the claimant's alleged degenerative disc disease of the cervical spine, low back pain, and fibromyalgia, the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations during the relevant period." Id. The ALJ considered evidence in Plaintiff's medical records in making these findings, and he ultimately concluded that Plaintiff's "impairments did not cause significant work related limitations and that they were controlled with treatment and medication." Id.

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

Recognizing the fact that "[Plaintiff's] symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, the ALJ expanded on his assessment of Plaintiff's RFC and considered the factors used to determine the credibility of Plaintiff's statements pursuant to 20 C.F.R. 404.1529(c) and 416.929(c). Id. First, the ALJ assessed Plaintiff's daily activities by reviewing a third party report, Plaintiff's report to a consultative psychologist in March 2009, and Plaintiff's statement to the ALJ describing her typical day. The ALJ further noted that on August 13, 2007, Plaintiff admitted to her treating physician "that she exercises regularly, four or more times a week." (Tr. 21). The ALJ ultimately determined that Plaintiff "is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting" and concluded "that she has the capacity for actually performing work activities." Id.

Next, the ALJ found that "while [Plaintiff] testified to worsening symptoms and limitations during the period from her onset date of January 2005 to her date last insured of December 31, 2008, the medical record does not document such worsening." Id. The ALJ considered Plaintiff's medical and treatment records, both during the relevant time period and after the date last insured, and found that it was not until January 30, 2009 that Plaintiff was diagnosed with fibromyalgia syndrome and treated medically. Id. The ALJ further noted that despite medical evidence revealed at that time, which deemed Plaintiff's back and neck pain to be severe, this pain resulted in "considerably less than disabling limitations on the [Plaintiff's] ability to perform basic work-related activities." Id. The ALJ concluded that "[p]rior to January 2009, there were no treatment records that showed objective medical evidence or laboratory findings critical to establishing the presence of any disabling impairment" during the relevant time period. Id.

6

Additionally, the ALJ considered the "precipitating and aggravating factors" regarding Plaintiff's involvement "in two motor vehicle accidents in 2006 and 2009 which she admitted 'flared up her symptoms." However, the ALJ reiterated Plaintiff's admission of her regular exercise in August 2007 and additionally noted that a physical examination of Plaintiff's neck in August 2007 was "unremarkable" and x-rays of Plaintiff's lumbar and cervical spines taken after her 2009 accident showed no evidence of fractures or "precervical soft tissue swelling." Id.

The ALJ further considered "[a]ny measures other than treatment the [Plaintiff] uses or has used to relieve pain or other symptoms" and "[a]ny other factors concerning the [Plaintiff's] functional limitations and restrictions due to pain or other symptoms." (Tr. 20). The ALJ found that Plaintiff's treatment for her "allegedly disabling impairment(s)" was "essentially routine and/or conservative in nature according to the medical records [and was] generally successful in controlling her symptoms. (Tr. 22). The ALJ noted that Plaintiff's "failure to follow-up on recommendations made by the treating doctor suggests that the symptoms may not have been as serious as has been alleged in connection with this application and appeal." Id. While the ALJ recognized that on April 13, 2010, Plaintiff's treating physician "concluded that the claimant was disabled and unable to work from fibromyalgia," he found that the physician's "opinion is outside of the relevant period, that is, the claimant's date last insured of December 31, 2008 and is consistent with the determinations in this decision." Id.

Based on the foregoing analysis of Plaintiff's RFC, at the fourth step, the ALJ determined that "[t]hrough the date last insured, the [Plaintiff] was capable of performing past relevant work as a Cashier and as a Cashier/customer service person," and "[t]his work did not require the performance of work related activities precluded by the [Plaintiff's] residual functional capacity."

7

Id. The ALJ agreed with "the State agency medical consultants' assessments that prior to her date last insured of December 31, 2008, the [Plaintiff] had the capacity to perform medium work with no postural, manipulative, visual, communicative or environmental limitations." Id. Therefore, where the ALJ deemed Plaintiff's past relevant work to be "light in exertion," pursuant to the Dictionary of Occupational Titles, he compared Plaintiff's RFC with the physical and mental demands of that work and found that Plaintiff "was able to perform [the work] as actually and generally performed." Id. Finally, the ALJ concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from January 1, 2005, the alleged onset date, through December 31, 2008, the date last insured." (Tr. 22-23).

We turn now to Plaintiff's arguments to this Court. Liberally construing the *pro se* Plaintiff's papers, she appears to contend that: (1) the ALJ and Appeals Council overlooked certain medical evidence; and (2) the ALJ's decision is not supported by substantial evidence.

### A. Relevance of Plaintiff's Additional Medical Evidence

In her first assignment of error, Plaintiff appears to argue that the ALJ and Appeals Council overlooked certain evidence that supports her allegations that she had disabling impairments. (Document No. 13, p.2-5). In order to determine whether substantial evidence supports the ALJ's decision, this Court must review the record as a whole, including any new evidence submitted to the Appeals Council. Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). In this case, Plaintiff submitted numerous records to the Appeals Council, covering the period from 1993 to February 2011. (Tr. 839-1292). The Appeals Council reviewed these records and concluded that the

> new information consist[ed] of evidence that is dated after December 31, 2008; evidence dated prior to [Plaintiff's] alleged onset date of January 1, 2005; and duplicates of evidence that we had already received and considered. Therefore, it does not affect the decision about whether [Plaintiff was] disabled at the time [Plaintiff was] last insured for disability benefits.

(Tr. 1-2). The undersigned agrees with the Appeals Council's determination that this additional evidence does not impact Plaintiff's claim because it is not relevant to the ALJ's decision that Plaintiff was not disabled between January 1, 2005 and December 31, 2008. Therefore, the undersigned respectfully disagrees with Plaintiff's apparent claim that the Appeals Council, and/or the ALJ, erred by overlooking this evidence and agrees with Defendant that it is not relevant to Plaintiff's claim. (Document No. 15, p.4-5).

Additionally, in her papers to this Court, Plaintiff submits a report by the Division of Motor Vehicles in order to support her claim that she has suffered additional pain caused by her involvement in an automobile accident on January 25, 2012. (Document Nos. 13, p.3-4; 13-2). Because Plaintiff "must prove that she became disabled prior to the expiration of her insured status," Johnson v. Barnhart, 434 F.3d 650, 655-56 (4th Cir. 2005) (citations omitted), the undersigned agrees with Defendant that "any evidence relating to that car accident is more than three years after the relevant time period, and thus has no bearing on her case." (Document No. 15, p.7). Similarly, Plaintiff's evidence of an MRI dated December 12, 2011, falls outside of the time period relevant to Plaintiff's claim. (Document Nos. 13-1; 13-4, p.2-3). Additional materials attached to Plaintiff's filing relate to the administrative proceedings leading up to this case and duplicate documents found in the record. (Document Nos. 13, p.7; 13-4, p.4, 7-12, 22-37). They likewise do not appear relevant to the Court's review of the ALJ's decision.

Having carefully reviewed the entire record, the undersigned finds that the additional evidence submitted to the Appeals Council, as well as the evidence attached to Plaintiff's Complaint, does not qualify as new or material evidence warranting remand of Plaintiff's case to the Commissioner. See Brewer v. Astrue, 2008 WL 4682185, at *17 (E.D.N.C. Oct. 21, 2008).

**B. ALJ's Decision Supported by Substantial Evidence**

Plaintiff also appears to argue that the ALJ's decision was not based on substantial evidence. As noted above, the Court's review of the ALJ's decision is limited to determining whether the decision "is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)). Plaintiff states that the ALJ "failed to evaluate all of [her] injurys [sic], long term injurys [sic], medical conditions, and depression, etc." (Document No. 13, p.2).

Specifically, Plaintiff refers to a long-term neck injury, long-term left foot injury, knee injury, an injury caused by a fall on ice, and fibromyalgia. Id. However, the record reveals that the ALJ specifically considered Plaintiff's history of neck pain, as well as related diagnoses and treatments, and deemed her degenerative disc disease of the cervical spine to be a severe impairment. (Tr. 17-18). Additionally, the ALJ assessed Plaintiff's treatment records related to her fibromyalgia and found this condition to be a severe impairment. Id. Further, the ALJ noted that Plaintiff "complained of left foot pain/plantar," but concluded that "the medical records reveal that this impairment did not impose more than a minimal limitation on the [Plaintiff's] ability to perform basic work functions during the relevant period." (Tr. 18). In regard to the alleged injury caused by a fall on ice, Plaintiff testified before the ALJ that this fall "re-jerked [her] neck that [she] already hurt." (Tr. 40-41). Thus, the ALJ arguably covered this injury in his discussion of Plaintiff's neck

10

pain. Finally, it does not appear that Plaintiff specifically identified knee pain in her application for DIB or in her testimony before the ALJ, but the record shows that she sporadically complained of knee pain to her treating physicians, (Tr. 30-59, 185-194, 328, 330, 345-368, 381-384, 816). However, as Defendant notes, Plaintiff's medical reports show that in November 2007 she walked normally. (Document No. 15, p.6 (citing Tr. 402)).

Plaintiff additionally complains of skin problems, allergies, and depression. (Document No. 13, p.2-3). Plaintiff's medical records reveal Plaintiff was periodically diagnosed with, and treated for, various skin conditions during the time period relevant to her claim. (Tr. 392-95, 418-25, 421). However, these conditions were never deemed to be significant impairments, and a medical record dated March 13, 2008 shows that Plaintiff had no skin issues. (Tr. 420). Similarly, Plaintiff was treated for allergies; however, as Defendant notes, it does not appear that her allergies caused any limitations. (Document No. 15, p.6; Tr. 400-402, 409, 410, 414, 415). With respect to Plaintiff's depression, it appears that the ALJ assessed Plaintiff's testimony, a report from the State agency mental health consultant, and Plaintiff's medical records in making his determination that this impairment "did not cause more than minimal limitations in her ability to perform basic mental work activities and was therefore nonsevere." (Tr. 18). Finally, and as noted above, Plaintiff alleges that she suffers from additional pain caused by an automobile accident in January 2012. (Document No. 13, p.3). Again, because this alleged impairment occurred well after Plaintiff's date last insured, it is not relevant to her current claim. Furthermore, the preceding analysis of the ALJ's decision shows that, in addition to evaluating the presence and severity of Plaintiff's alleged physical and mental impairments, the ALJ sufficiently assessed evidence relating to the impact of these impairments on Plaintiff's RFC. (Tr. 19-22).

Based on the foregoing analysis, the undersigned finds that the ALJ considered all relevant evidence, and his decision that Plaintiff was not disabled during the period relevant to her claim is supported by substantial evidence.

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Summary Judgment" (Document No. 13) be **DENIED**; Defendant's "Motion For Summary Judgment" (Document No. 14) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within **fourteen (14) days** after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the

District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to the *pro se* Plaintiff, Defendant, and the Honorable Max O. Cogburn, Jr.

**IT IS SO RECOMMENDED**.

Signed: May 10, 2012

David C. Keesler
United States Magistrate Judge